UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                  :

UNITED STATES OF AMERICA          :
                  :

        - v. -          :    S1 15 Cr. 711 (DLC)
                  :

ANGEL FIGUEROA,         :
    a/k/a "Strange,"      :
ELIZABETH CAMEJO,      :
    a/k/a "Liz,"        :
                  :

        Defendants.    :
                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Justina Geraci
Jordan Estes
Assistant United States Attorneys
    *Of Counsel*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................... 1

   A.   Factual Background ................................................................. 1

   B.   Procedural Background ............................................................ 3

   C.   Statutory Scheme ................................................................... 4

ARGUMENT ...................................................................................................... 5

I.   Hobbs Act Robbery Is a Crime of Violence Under Section 924(c)(3)(A). ........................... 6

   A.   Hobbs Act Robbery Involves the Use, Attempted Use, or Threatened Use of Force......... 6

   B.   The Defendants' Interpretation of the Force Clause Would Lead to Absurd Results. ..... 12

II.   Hobbs Act Robbery Conspiracy Is a Crime of Violence Under Section 924(c)(3)(A) ........ 14

III.   Section 924(c)(3)(B) Is Not Unconstitutionally Vague. ........................................ 15

   A.   Section 924(c)(3)(B) is Not Unconstitutionally Vague Under *Johnson* ......................... 16

      1.   Section 924(c)(3)(B) Does Not Go Beyond the Elements of the Offense To Consider Potential Extra-Offense Conduct.................................................................. 19

      2.   The Enumerated Offenses in ACCA are Absent ........................................... 21

      3.   The Supreme Court Has Not "Repeatedly" Failed to Construe § 924(c)(3)(B) in a Workable Way................................................................................... 23

      4.   Recent Non-Binding Decisions Holding § 16(b) and § 924(c)(3)(B) Unconstitutional Rest Upon Faulty Reasoning, and Should Not Control this Court's Analysis............. 24

   B.   The Defendants Cannot Present a Vagueness Challenge Because § 924(c)(3)(B) Is Not Unconstitutionally Vague as Applied to Them................................................. 26

CONCLUSION................................................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abramski* v. *United States*, 134 S. Ct. 2259 (2014) ............................................................. 12

*Begay* v. *United States*, 553 U.S. 137 (2008) ..................................................................... 22

*Callanan* v. *United States*, 364 U.S. 587 (1961) ................................................................ 15

*Chapman* v. *United States*, 500 U.S. 453 (1991) ............................................................... 27

*Chrzanoski* v. *Ashcroft*, 327 F.3d 188 (2d Cir. 2003) ........................................................ 11

*Cooper v. Krueger*, No. 15 Civ.1425, 2015 WL 8215348 (C.D. Ill. Dec. 8, 2015) ..................... 19

*Descamps* v. *United States*, 133 S. Ct. 2276 (2013) ........................................................... 8

*Dimaya* v. *Lynch*, 803 F.3d 1110 (9th Cir. 2015) ................................................. 24, 25, 26

*Gall* v. *United States*, 552 U.S. 38 (2007) ......................................................................... 25

*Gonzales* v. *Duenas-Alvarez*, 549 U.S. 183 (2007) ............................................................ 9

*Iannelli* v. *United States*, 420 U.S. 770 (1975) ................................................................. 15

*James* v. *United States*, 550 U.S. 192 (2007) .............................................................. 16, 22

*Johnson* v. *United States*, 135 S. Ct. 2551 (2015) .................................................... *passim*

*Johnson* v. *United States*, 559 U.S. 133 (2010) ............................................................. 9, 12

*Johnson* v. *United States*, 779 F.3d 125 (2d Cir. 2015) ..................................................... 7

*King* v. *Burwell*, 135 S. Ct. 2480 (2015) ......................................................................... 14

*Leocal* v. *Ashcroft*, 543 U.S. 1 (2004) ................................................................. 13, 20, 23

*Moncrieffe* v. *Holder*, 133 S. Ct. 1678 (2013) ................................................................. 9

*New York State Dept. of Social Servs.* v. *Dublino*, 413 U.S. 405 (1973) ................................. 14

*Skilling* v. *United States*, 561 U.S. 358 (2010) ................................................................. 28

*Taylor* v. *United States*, 495 U.S. 575 (1990) ............................................................... 9, 12

*United States* v. *Acosta*, 470 F.3d 132 (2d Cir. 2006). .................................................. 7, 23

*United States* v. *Anglin*, 14 Cr. 3, 2015 WL 6828070 (E.D. Wisc. Nov. 6, 2015) ................... 7, 8

*United States* v. *Brownlow*, 15 Cr. 134, 2015 WL 6452620 (N.D. Ala. Oct. 26, 2015) ........... 7, 8

*United States* v. *Castleman*, 134 S. Ct. 1405 (2014) .................................................. 8, 9, 12

*United States* v. *Checora*, 2015 WL 9305672 (D. Utah Dec. 21, 2015) ................................ 8

*United States* v. *Coppola*, 671 F.3d 220 (2d Cir. 2012) .................................................... 26

*United States* v. *Desena*, 287 F.3d 170 (2d Cir. 2002) .................................................... 14

*United States* v. *DiSomma*, 951 F.2d 494 (2d Cir. 1991) ........................................... 14

*United States* v. *Doe*, 15 Cr. 302, 2015 WL 7422618 (E.D.N.Y. Oct. 29, 2015)........................ 20

*United States* v. *Elder*, 88 F.3d 127 (2d. Cir. 1996) ................................................. 14

*United States* v. *Farhane*, 634 F.3d 127 (2d Cir. 2011) ........................................ 26, 27

*United States* v. *Gonzalez-Longoria*, 15-40041, 2016 WL 537612 (5th Cir. Feb. 10, 2016)....... 24

*United States* v. *Gonzalez-Longoria*, 15-40041, 2016 WL 766980 (5th Cir. Feb. 26, 2016)....... 24

*United States* v. *Hayes*, 555 U.S. 415 (2009) ................................................... 9, 12

*United States* v. *Hunter*, 12 Cr. 124, 2015 WL 6443084 (E.D. Va. Oct. 23, 2015) ................ 7, 19

*United States* v. *Ivezaj*, 568 F.3d 88 (2d Cir. 2009)................................................. 8

*United States* v. *Johnson*, 14 Cr. 476 (S.D.N.Y. Dec. 23, 2015).......................... *passim*

*United States* v. *Josephberg*, 459 F.3d 350 (2d Cir. 2006)........................................... 5

*United States* v. *Lusenhop*, No. 14 Cr. 122, 2015 WL 5016514 (S.D. Ohio Aug. 25, 2015)....... 19

*United States* v. *Mazurie*, 419 U.S. 544 (1975) ................................................. 27

*United States* v. *McDaniels*, 15 Cr. 171, 2015 WL 7455539 (E.D. Va. Nov. 23, 2015)....... *passim*

*United States* v. *McGuire*, 706 F.3d 1333 (11th Cir. 2013).................................. 10, 13

*United States* v. *Mendez*, 992 F.2d 1488 (9th Cir. 1993)............................................ 6

*United States* v. *Merinord*, 15 Cr. 136, 2015 WL 6457166 (E.D.N.C. Oct. 26, 2015) ............ 7, 10

*United States* v. *Nat'l Dairy Prods. Corp.*, 372 U.S. 29 (1963) .................................. 28

*United States* v. *Patino*, 962 F.2d 263 (2d Cir. 1992) ............................................ 15

*United States* v. *Pena*, 15 Cr. 551, 2016 WL 690746 (S.D.N.Y. Feb. 11, 2016). ......................... 7

*United States* v. *Petrillo*, 332 U.S. 1 (1947) .................................................. 24

*United States* v. *Powell*, 423 U.S. 87 (1975) .................................................. 27

*United States* v. *Prickett*, No. 14 Cr. 30018, 2015 WL 5884904 (W.D. Ark. Oct. 8, 2015)........ 19

*United States* v. *Redmond*, 14 Cr. 226, 2015 WL 5999317 (W.D.N.C. Oct. 13, 2015) ............ 7, 8

*United States* v. *Standberry*, No. 15 Cr. 102, 2015 WL 5920008 (E.D. Va. Oct. 9, 2015)........... 6

*United States* v. *Taylor,* No. 09 Cr. 5517, 2016 WL 537444 (6th Cir. Feb. 11, 2016) ............... 18

*United States* v. *Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012)................................... 11

*United States* v. *Tsarnaev*, 2016 WL 184389 (D. Mass. Jan. 15, 2016)........................... 13

*United States* v. *Vivas-Ceja*, 15 Cr. 1770, 2015 WL 9301373 (7th Cir. 2015) ..................... 24, 26

*United States* v. *Williams*, 553 U.S. 285 (2008) ................................................ 18

*United States v. Wilson*, No 15 Cr. 21 (E.D. Va. Dec. 8, 2015) ............................................ 19, 25

## STATUTES

18 U.S.C. § 1111 ...................................................................................................................... 13

18 U.S.C. § 1515(a)(2) .............................................................................................................. 14

18 U.S.C. § 16(b) ...................................................................................................................... 22

18 U.S.C. § 1951(a) ............................................................................................................... 4, 11

18 U.S.C. § 1951(b)(1). .............................................................................................................. 4

18 U.S.C. § 1952 ....................................................................................................................... 22

18 U.S.C. § 1959 ....................................................................................................................... 22

18 U.S.C. § 3142(f)(1)(A) and (g)(1) ....................................................................................... 22

18 U.S.C. § 32(a)(1) .................................................................................................................. 10

18 U.S.C. § 3663A(c)(1)(A) ...................................................................................................... 22

18 U.S.C. § 5032 ....................................................................................................................... 22

18 U.S.C. § 521(d)(3)(C) ........................................................................................................... 22

18 U.S.C. § 924(c)(1)(A). ............................................................................................................ 4

18 U.S.C. § 924(c)(3)(A). ................................................................................................... *passim*

18 U.S.C. § 924(c)(3)(B). ................................................................................................... *passim*

18 U.S.C. § 924(e) .................................................................................................................... 16

18 U.S.C. § 924(e)(2)(B)(ii) ........................................................................................... 5, 16, 19

## OTHER AUTHORITIES

Webster's Ninth New Collegiate Dictionary 1229 (1991) ......................................................... 15

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the motion to dismiss the indictment, which was filed by defendants Angel Figueroa, a/k/a "Strange" ("Figueroa") and Elizabeth Camejo, a/k/a "Liz" ("Camejo") on March 4, 2016.[1]

The defendants have moved to dismiss Count Two of the underlying Indictment, captioned 15 Cr. 711 (DLC), which charged them with violating Title 18, United States Code, Sections 924(c) and 2 (the "924(c) Count").[2]  The defendants argue that the 924(c) Count should be dismissed because the underlying Hobbs Act robbery and conspiracy to commit Hobbs Act robbery counts are not "crimes of violence" within the meaning of 18 U.S.C. § 924(c)(3). For the reasons set forth below, their motion should be denied.

## BACKGROUND

**A.   Factual Background**

The Government expects that the evidence at trial will show, in substance and in relevant part, the following, related to the present motion.   In or about 2012, Camejo and another individual, who later became a cooperating witness (the "CW"), had incurred a substantial drug debt.   In order to pay off the debt to the CW's source of supply, Camejo suggested that the CW

---

[1]      The Motion to Dismiss the Indictment was filed by counsel for Camejo, but counsel for Figueroa submitted a letter to the Court, dated March 8, 2016, indicating that Figueroa joined in the motion.   *See* Dkt. Entry No. 27.

[2]      A Superseding Indictment, captioned S1 15 Cr. 711 (DLC), was subsequently filed on March 7, 2016; consequently, the 924(c) Count that is the subject of this motion is now Count Four.   As noted in the defense motion, the Government had informed defense counsel that it intended to supersede the indictment to add, among other things, a charge of substantive Hobbs Act robbery.   (Br. 7-8).   Accordingly, defense counsel's brief addresses the Superseding Indictment, arguing that neither the charge of substantive Hobbs Act robbery nor the charge of conspiracy to commit Hobbs Act robbery supports the charge under 18 U.S.C. §§ 924(c) and 2. (Br. 7-15).

1

rob her employer (the "Victim"), who lived on Crotona Avenue in the Bronx, and who was himself a significant heroin and "crack" cocaine dealer.    A day or so before the robbery, Camejo pointed out the Victim's home to the CW, and explained how to enter the home and where the drugs could be found inside.    On or about October 30, 2012, the CW and Figueroa, a long-time associate of the CW's, brought a loaded .357 Magnum to Camejo's residence in the Bronx, where they met with her to finalize the robbery plans.

The CW and Figueroa then walked from Camejo's residence to the Victim's residence on Crotona Avenue.    They carried with them the loaded firearm, a fake police badge, a two-way walkie-talkie radio, and several zipties.    The CW went to the side door of the Victim's residence, as Camejo had instructed, and purchased heroin from the Victim, while Figueroa waited outside.    The CW then displayed a fake police badge, indicated that the Victim was under arrest, and brandished the firearm.    Once inside the residence, the CW bound the Victim's hands using the zipties, and removed a wad of cash from the Victim's pockets, which represented the proceeds of drug sales.    The CW then began searching the residence for narcotics and money.    The Victim managed to break free of the zipties, and after doing so, he attacked the CW.    During the course of the struggle, the Victim was shot in the leg.

The CW quickly fled the residence after the gun went off and met Figueroa outside on the street.    The CW and Figueroa proceeded to the CW's apartment, where they split the cash proceeds that the CW had taken from the Victim.    The Victim went to the hospital, where he was treated for the gunshot wound to his leg.    The police were then informed of the incident. They accompanied the Victim back to his residence, where certain physical evidence was collected.    This evidence included, among other things, the zipties and one half of the two-way walkie-talkie radio.    The radio was swabbed for the presence of DNA, and a database match to

Figueroa was generated.

Several weeks after the robbery, Camejo contacted the CW seeking her "cut" of the robbery proceeds.   The CW gave her heroin and forgave her debt.   The CW used the remainder of the cash he had obtained to pay back his source of supply.

**B.      Procedural Background**

On October 21, 2015, a grand jury sitting in this District returned a sealed two-count Indictment, captioned, 15 Cr. 711 (DLC), charging the defendants with: (1) conspiracy to commit Hobbs Act robbery on or about October 30, 2012, in violation of 18 U.S.C. § 1951, and (2) aiding and abetting the possession and use of a firearm, which was brandished and discharged, in furtherance of the robbery conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.   Figueroa was arrested on these charges on October 28, 2015, and has remained detained since his presentment.   Camejo was arrested on these charges on October 30, 2015, and was released on certain bail conditions at her presentment.

On March 7, 2016, the defendants were charged in the S1 Superseding Indictment with: (1) conspiracy to commit Hobbs Act robbery in or about 2012, in violation of 18 U.S.C. § 1951; (2) substantive Hobbs Act robbery, which occurred on or about October 30, 2012, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1951 and 2; (3) conspiracy to distribute and possess with the intent to distribute a quantity of mixtures and substances containing a detectable amount of heroin and "crack" cocaine, in or about 2012, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846; and (4) aiding and abetting the use and possession of a firearm, which was brandished and discharged, in furtherance of the two Hobbs Act robbery counts, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.   Trial in this matter is scheduled to begin on May 9, 2016.

3

**C.     Statutory Scheme**

Section 924(c) provides for enhanced punishment for those who, *inter alia*, use or carry a firearm "during and in relation to any crime of violence" that is itself a violation of federal law. 18 U.S.C. § 924(c)(1)(A).   The statute defines "crime of violence" as an offense that is a felony and either:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. §§ 924(c)(3)(A), 924(c)(3)(B).   Section 924(c)(3)(A) is commonly referred to as the "force clause."   Section 924(c)(3)(B) is commonly referred to as the "residual clause."

Here, the underlying crimes of violence are (1) a Hobbs Act robbery and (2) a conspiracy to commit Hobbs Act robbery, both in violation of Section 1951(a).   In pertinent part, that statute provides:

> Whoever in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity in commerce, by robbery . . . or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section [shall be punished].

18 U.S.C. § 1951(a).   The statute defines robbery as:

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).

4

## ARGUMENT

The defendants argue that the Court should dismiss the 924(c) Count because (1) neither Hobbs Act robbery nor conspiracy to commit Hobbs Act robbery is a "crime of violence" under the force clause in § 924(c)(3)(A) and (2) the residual clause in § 924(c)(3)(B) is void for vagueness following the Supreme Court's decision in *Johnson* v. *United States*, 135 S. Ct. 2551 (2015), which invalidated a portion of the Armed Career Criminal Act ("ACCA")'s definition of "violent felony," codified at 18 U.S.C. § 924(e)(2)(B)(ii).

As an initial matter, the Court could defer ruling on the motion to dismiss until the Second Circuit decides *United States* v. *Hill*, 14-3872 (2d Cir. 2016), which presents the identical issues raised by the defendants in the motion to dismiss, or until the defendants' sentencing in this case, whichever comes first.[3]   Taking this approach would not prejudice the defendants in any way:   the issue will be adequately preserved for appeal by having been timely raised, and the evidence presented at trial will be identical whether or not the Court dismisses Count Four at this time.[4]

Nevertheless, if the Court proceeds to the merits at this time, it should deny the motion to dismiss for two reasons.   First, under Supreme Court and Second Circuit precedent, Hobbs Act robbery and conspiracy to commit Hobbs Act robbery each qualify as a "crime of violence"

---

[3]     In *Hill*, which is fully submitted before the Second Circuit, the defendant is challenging his conviction under 18 U.S.C. § 924(j) (which incorporates the relevant language of § 924(c)) because, he contends, Hobbs Act robbery is not a "crime of violence" under § 924(c)'s force clause or residual clause.   The defendant did not raise these arguments before the District Court. In addition, the same issue is before the Second Circuit in *United States* v. *Barrett*, 14-2641, which is also fully briefed and was argued on January 22, 2016.

[4]     This approach is commonly taken in the analogous situation of a pre-trial motion to dismiss counts on grounds of multiplicity, duplicity, or double jeopardy.   All charged counts may go to the jury without violating a defendant's double jeopardy rights, and if a defendant is convicted on more than one multiplicitous count, the Court should impose punishment on only one of the counts.   *See, e.g.*, *United States* v. *Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006).

under the force clause of § 924(c)(3)(A).   Thus, regardless of the continued validity of the

residual clause, the force clause alone supports the charge in Count Four.   Second, the

defendants' general vagueness challenge to § 924(c)(3)(B) in light of *Johnson* is meritless.

Section 924(c)(3)(B) differs materially from the clause struck down in *Johnson* in terms of

language, structure, and precedent.   In short, Section 924(c)(3)(B) does not suffer from the

same flaws that compelled the *Johnson* Court to declare the ACCA's residual clause void for

vagueness.   Accordingly, the defendants' challenge to the constitutionality of § 924(c)(3)(B)

and the propriety of Count Four of the Superseding Indictment should be rejected.

I.    **Hobbs Act Robbery Is a Crime of Violence Under Section 924(c)(3)(A).**

The defendants claim that neither Hobbs Act robbery nor conspiracy to commit Hobbs

Act robbery qualifies as a "crime of violence" under the force clause of § 924(c)(3)(A) because

the crimes do not include as an element the use, attempted use, or threatened use of force.   This

argument ignores established legal precedent and would lead to the absurd result that virtually no

federal criminal offenses would fall within § 924(c)(3)(A).

A.    **Hobbs Act Robbery Involves the Use, Attempted Use, or Threatened Use of Force.**

Every court to consider the issue, both before and after *Johnson*, has held that Hobbs Act

robbery constitutes a crime of violence under the force clause. *United States* v. *Mendez*, 992 F.2d

1488, 1491 (9th Cir. 1993) (substantive Hobbs Act robbery offense "indisputably qualifies as a

crime of violence" because it contains as an element the actual or threatened use of force or

violence); *United States* v. *Standberry*, No. 15 Cr. 102 (HEH), 2015 WL 5920008, *5 (E.D. Va.

Oct. 9, 2015) ("This Court will therefore join other courts in finding that Hobbs Act robbery

contains as one of its elements the actual, attempted or threatened use of physical force against

the person or property of another, thereby constituting a crime of violence under

6

§ 924(c)(3)(A)."); *United States* v. *Redmond*, 14 Cr. 226 (MOC), 2015 WL 5999317, *3-4

(W.D.N.C. Oct. 13, 2015) (same); *United States* v. *Hunter*, 12 Cr. 124 (RAJ), 2015 WL

6443084, *2 (E.D. Va. Oct. 23, 2015) (same); *United States* v. *Merinord*, 15 Cr. 136 (RER),

2015 WL 6457166, *4-5 (E.D.N.C. Oct. 26, 2015) (same); *United States* v. *Brownlow*, 15 Cr.

134 (SLB) (SGC), 2015 WL 6452620, *4 (N.D. Ala. Oct. 26, 2015) ("The law is firmly

established that a Hobbs Act robbery is a crime of violence under § 924(c)(3)(A)."); *United

States* v. *Anglin*, 14 Cr. 3 (CNC), 2015 WL 6828070, *6 (E.D. Wisc. Nov. 6, 2015) ("Since

*Johnson* issued, several courts have found that Hobbs Act crimes qualify as crimes of violence

under the force clause, which was unaffected by *Johnson*."); *United States* v. *McDaniels*, 15 Cr.

171 (TSE), 2015 WL 7455539, *3-6 (E.D. Va. Nov. 23, 2015); *see also Johnson* v. *United

States*, 779 F.3d 125, 128-29 (2d Cir. 2015) (bank robbery and armed bank robbery constitute

crimes of violence under § 924(c)(3)(A)).   In particular, Judge Nathan recently issued a

thorough, well-reasoned opinion concluding that Hobbs Act robbery was a crime of violence

under the force clause, rejecting virtually identical defense arguments to those made here.   *See

United States* v. *Pena*, 15 Cr. 551 (AJN), 2016 WL 690746, at *5-12 (S.D.N.Y. Feb. 11, 2016).[5]

Nevertheless, the defendants argue that Hobbs Act robbery does not qualify as a crime of

violence under the force clause because the robbery statute must be parsed pursuant to the

"categorical approach" endorsed by the Second Circuit in *United States* v. *Acosta*, 470 F.3d 132,

135 (2d Cir. 2006).   (Br. 8-9).   In *Acosta*, the Second Circuit held that, to determine whether a

particular violation constitutes a crime of violence under Section 924(c)(3), courts must focus on

"the intrinsic nature of the offense rather than on the circumstances of the particular crime."

---

[5]     In addition, Judge Kaplan recently denied a motion to dismiss premised on arguments
virtually identical to those of the defendants here, but the order did not specify the reasons for the
denial.   *See United States* v. *Bettis*, S1 15 Cr. 410 (LAK), Dkt. Entry No. 72.

470 F.3d at 135.   Thus, "only the minimum criminal conduct necessary for conviction under a particular statute is relevant."   *Id.*; *see also Descamps* v. *United States*, 133 S. Ct. 2276, 2282 (2013) (applying categorical approach to ACCA predicate offenses); *United States* v. *Ivezaj*, 568 F.3d 88, 95 (2d Cir. 2009) (reaffirming categorical approach).[6]

Applying this analysis, the defendants assert that a Hobbs Act robbery can be committed

_____

[6]      In the wake of *Johnson*, numerous courts have questioned the rationale behind applying a categorical approach to § 924(c) predicates. *See, e.g.*, *United States* v. *Checora*, 2015 WL 9305672, at *2 (D. Utah Dec. 21, 2015) (collecting cases). "Because the court in a § 924(c)(3) case is not looking at a prior conviction where facts may be lost or unclear, there is no danger of a collateral trial or judge-found facts."   *Id.* at *3.   In this Circuit, *Ivezaj* and *Acosta* dictate the use of the categorical approach, but do not discuss the differences between long-past convictions, at issue in ACCA and most § 16(b) cases, and presently charged conduct that will be subject to jury findings, as is the case in § 924(c) cases.

A court may apply the "modified" categorical approach if the underlying federal statute is a "divisible statute," *i.e.*, a statute that sets out one or more elements of the offense in the alternative.   *See United States* v. *Castleman*, 134 S. Ct. 1405, 1414 (2014); *Descamps*, 133 S. Ct. at 2281.   The modified categorical approach "permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction.   The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime."   *Descamps*, 133 S. Ct. at 2281.

A number of courts have found that the Hobbs Act is divisible, "with at least two (robbery or extortion) and up to six (robbery, extortion, attempting to rob or extort, conspiring to rob or extort, committing physical violence in furtherance of a plan or purpose to rob or extort, and threatening to commit physical violence in furtherance of a plan to rob or extort) distinct ways by which the crime can be committed."   *Anglin*, 2015 WL 6828070, at *7; *see also Redmond*, 2015 WL 5999317, at *2; *Brownlow*, 2015 WL 6452620, *3.   As a result, these courts have applied the "modified categorical approach" to determine whether a charge under the Hobbs Act satisfied the force clause.   *Id.*

If the modified categorical approach were applied in this case, the charged Robberies clearly qualify under the force clause as crimes of violence.   Specifically, the S1 Indictment states that both the June 16 Robbery and June 18 Robbery were armed robberies at which firearms were discharged.   Nevertheless, for the reasons discussed above, a Hobbs Act robbery charge also qualifies as a crime of violence under the categorical approach, consistent with current governing Second Circuit precedent.

"by merely putting someone in fear of future injury to his person or property, including mere threats of intangible economic harm and other threats of harm without physical force."   (Br. 10).   According to defendants, "[p]utting someone in 'fear of injury, immediate or future, to his person or property, does not require the use, attempted use, or threatened use of violent force." (Br. 10)(citation omitted).

The mere existence of a far-fetched hypothetical scenario does not categorically disqualify Hobbs Act robbery from being a crime of violence:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.   To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case.   But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Gonzales* v. *Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *accord Moncrieffe* v. *Holder*, 133 S. Ct. 1678, 1684-85 (2013).   When faced with alternative possible readings of a statute, courts do not accept readings that lead to absurdities or that result in a statute with implausibly limited application.   *See*, *e.g.*, *United States* v. *Castleman*, 134 S. Ct. 1405, 1413 (2014); *United States* v. *Hayes*, 555 U.S. 415, 427 (2009).   Indeed, the Supreme Court has repeatedly warned against such incongruous readings in addressing Section 924.   *See*, *e.g.*, *Taylor* v. *United States*, 495 U.S. 575, 594 (1990) ("[W]e shall not read into the statute a definition . . . so obviously ill suited to its purposes."); *Johnson* v. *United States*, 559 U.S. 133, 139-140 (2010) (noting that "context determines meaning" and that "we do not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense") (internal quotation marks and citation omitted)).

As other courts have already done, this Court should reject the defendants' fantastic

claims regarding the commission of robbery without force.   *See, e.g., United States* v. *Walker*, 15 Cr. 49, 2016 WL 153088, at *5 (E.D. Va. Jan. 12, 2016) ("common sense dictates that any 'fear of injury' flows from the fear of physical force"); *Standberry*, 2015 WL 5920008, at *4 (finding this argument to pose "a somewhat implausible paradigm where a defendant unlawfully obtains another person's property against their will by unintentionally placing the victim in fear of injury").   In *United States* v. *McGuire*, 706 F.3d 1333 (11th Cir. 2013) (O'Connor, *J.*, sitting by designation), the court examined whether a violation of 18 U.S.C. § 32(a)(1), which prohibits attempting to destroy, disable or wreck an aircraft, was a crime of violence for purposes of § 924(c)(3)(A).   In concluding that it was, the court noted that it was bound to focus only on the "plausible applications of the statute" to determine whether it satisfied the force clause. 706 F.3d at 1337.   The court rejected the defendant's claim that disabling an aircraft by tampering with the engine or deflating the tires before it was airborne did not constitute an intentional use of force.   *Id.*   The court held that:

> [i]t makes little difference that the physical act, in isolation from the crime, can be done with a minimum of force; we would not say that laying spikes across a roadway is a non-violent crime because laying something upon the ground is not a forceful act. It still involves an intentional act against another's property that is calculated to cause damage and that is exacerbated by indifference to others' wellbeing.

*Id.* at 1338.

Similarly, there are no plausible violations of the Hobbs Act robbery statute that could be committed without the use or threatened use of physical force against a person or property.   *See Merinord*, 2015 WL 6457166, at *4 ("The Court can conceive of no scenario in which a person commits robbery by fear of physical injury without threatening physical harm to the person or property of another – even the vaunted example of poison fails.   Where the victim necessarily experiences fear of bodily injury or fear of property injury, by definition, he must experience

force capable of causing said injury").[7]

The cases on which the defendants rely are not to the contrary.   (*See* Br. 10-12).   In *Chrzanoski* v. *Ashcroft*, 327 F.3d 188 (2d Cir. 2003), the Second Circuit held that a Connecticut misdemeanor that criminalized causing injury to another person was not a crime of violence for purposes of deportation because it did not require the use of force.   327 F.3d at 195-96.   Here, however, the Hobbs Act statute explicitly prohibits "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(a).   Unlike the Connecticut statute that covered any injury no matter how inflicted, the Hobbs Act is narrowly drawn to encompass robbery by force or fear of injury.   It defies logic to suggest that someone could be robbed by placing him in "fear of injury" without using or threatening to use physical force.   *See, e.g.*, *McDaniels*, 2015 WL 7455539, at *4-5; *Standberry*, 2015 WL 5920008, at *4 ("any act or threatened act which engenders a fear of injury implicates force and potential violence").

The Fourth Circuit's decision in *United States* v. *Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), is also inapposite.   In *Torres-Miguel*, the court found that a California conviction for threatening to commit a crime that would result in injury was not a crime of violence for purposes of the United States Sentencing Guidelines.   *Id.*   However, the statute at issue in

---

[7]     Even an act such as exposing someone to poison involves an act of physical force.   The Supreme Court recently rejected the argument that "[p]oison may have 'forceful physical properties' as a matter of organic chemistry, [but] no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink," on the ground that the "use of force" in [this] example is not the act of 'sprinkl[ing]' the poison; it is the act of employing poison knowingly as a device to cause physical harm." *United States* v. *Castleman*, 134 S. Ct. 1405, 1415 (2014).   The Court noted that such an argument was analogous to asserting that "pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim."   *Id.*

*Torres-Miguel* covered only threats and did not require any other conduct.   In contrast, the Hobbs Act robbery statute requires a robbery – the unlawful taking of property from someone's presence against his will.   In addition, the Supreme Court has rejected the rationale of *Torres-Miguel* in *United States* v. *Castleman*, 134 S. Ct. 1405 (2014).   *See McDaniels*, 2015 WL 7455539, at *5.

**B.     The Defendants' Interpretation of the Force Clause Would Lead to Absurd Results.**

The well settled principles of statutory interpretation support the natural conclusion that Hobbs Act robbery constitutes a "crime of violence" under § 924(c)(3)(A).   The defendants' argument to the contrary would essentially eviscerate § 924(c)(3)(A) and should be rejected.

Courts interpret statutory language "not in a vacuum, but with reference to the statutory context, structure, history, and purpose."   *Abramski* v. *United States*, 134 S. Ct. 2259, 2267 (2014) (internal quotation marks omitted).   Moreover, when faced with alternative possible readings of a statute, courts do not accept readings that lead to absurdities or that result in a statute with implausibly limited application.   *See, e.g.*, *Castleman*, 134 S. Ct. at 1413; *United States* v. *Hayes*, 555 U.S. 415, 427 (2009); *Taylor* v. *United States*, 495 U.S. at 594; *Johnson* v. *United States*, 559 U.S. at 139-140.

Here, adopting the defendants' interpretation of § 924(c)(3)(A) would lead to absurd results.   Under the defendants' reasoning, offenses in which a defendant intentionally causes serious physical injuries, like murder, do not "necessarily" involve the use of physical force. For example, under the defendants' logic, poisoning someone would not constitute a use of physical force; electrocuting the person would not either; trapping someone in a trunk of a car to bake to death in summer heat or suffocate would not involve physical force; intentionally causing a dog or a piece of machinery to tear a person apart would not count; starving someone

12

to death would not necessarily involve physical force; or, to take an example from a case interpreting § 924(c)(3) in which Justice O'Connor recently rejected an argument like defendants', intentionally damaging controls in an airplane loaded with passengers would not involve physical force.   *McGuire*, 706 F.3d at 1337.   If the defendants think that some of the methods of committing murder (or robbery) described above do constitute physical force, while others do not, their analysis offers no coherent way for drawing that distinction.

The defendants' restrictive reading of physical force yields other bizarre and unacceptable results:    federal first-degree murder would not involve the use of "physical force" within the meaning of the force clause of Section 924(c), because it can be accomplished "by any . . . kind of willful, deliberate, malicious, and premeditated killing." 18 U.S.C. § 1111. However, because the Supreme Court has held, in the context of 18 U.S.C. § 16, that "a person would 'use . . . physical force against' another when pushing him," *Leocal* v. *Ashcroft*, 543 U.S. 1, 9 (2004), a federal statute limited solely to assault by pushing someone *would* involve the use of physical force.    Thus, the defendants offer a deeply unpersuasive reading of § 924(c)(3)(A) that would deem a statute limited solely to a simple push as a crime of violence, while at the same time excluding intentional pre-meditated murder as a crime of violence under that same provision.

Taken collectively, the defendants' approach would result in virtually no federal criminal offenses falling within § 924(c)(3)(A), because federal criminal offenses routinely encompass means of causing serious bodily harm that are broader than defendants' interpretation of "physical force."    *See, e.g., United States* v. *Tsarnaev*, 2016 WL 184389 at *15-16 (D. Mass. Jan. 15, 2016).    Indeed, even a statute that seemingly tracks the language of § 924(c)(3)(A)— such as 18 U.S.C. § 1512(a)(2)—turns out to rely on a broader definition of "physical force" than

13

that proposed by the defendant.   *See* 18 U.S.C. § 1515(a)(2) (defining "physical force" as "physical action against another . . . includ[ing] confinement").   The defendants' reading of "physical force" not only leaves § 924(c)(3)(A) with little application, *Castleman*, 134 S. Ct. at 1434, it essentially destroys the provision.   Courts "'cannot interpret federal statutes to negate their own stated purposes.'"   *King* v. *Burwell*, 135 S. Ct. 2480, 2493 (2015) (quoting *New York State Dept. of Social Servs.* v. *Dublino*, 413 U.S. 405, 419-20 (1973)).

## II.   Hobbs Act Robbery Conspiracy Is a Crime of Violence Under Section 924(c)(3)(A)

It has long been settled in this Circuit that a conspiracy to commit a crime of violence is itself a crime of violence for purposes of § 924(c).   *See, e.g.*, *United States* v. *Desena*, 287 F.3d 170, 181 (2d Cir. 2002) ("a conspiracy to commit a crime of violence is a sufficient predicate crime of violence for the purposes of 18 U.S.C. § 924(c).") (internal quotation omitted).   Nearly two decades ago, the Second Circuit ruled that "a Hobbs Act conspiracy to commit robbery is by definition a conspiracy that involves a substantial risk that physical force may be used against the person or property of another."   *United States* v. *Elder*, 88 F.3d 127, 129 (2d. Cir. 1996). Because such a conspiracy falls squarely within the ambit of 924(c)'s residual clause, the Second Circuit in *Elder* did not need to consider whether it also fell within the force clause.[8]

To fall within the force clause, conspiracy to commit robbery must have, as an element, the "use, attempted use, or threatened use of physical force."   Because the conspiracy prohibition is embedded within § 1951, even under a categorical approach one element of the conspiracy offense is, by definition, an agreement between the conspirators to commit the crime of robbery, that is, to take property from someone by force.   This agreement "threatens" the use

---

[8]      In *United States* v. *DiSomma*, 951 F.2d 494 (2d Cir. 1991), the Second Circuit, applying the identical language of the Bail Reform Act, stated that "conspiracy to commit robbery is a crime of violence because one of its elements is actual or threatened use of force."   *Id.* at 496.

14

of force.

One definition of "threaten" is to "to give signs or warning of," or "to portend." Webster's Ninth New Collegiate Dictionary 1229 (1991). When two or more people share the specific intent to commit a robbery—that is, to take something from a person by force—that agreement, without more, "portends" the use of force, because the existence of the conspiracy makes the occurrence of the conspiracy's object far more likely. As a result, the robbery conspiracy includes, as an element, the threatened use of force, and thereby qualifies as a "crime of violence" under the force clause.

This construction is entirely consistent with Congress's intent in defining a "Crime of violence." Courts have long recognized that conspiracies to commit substantive offenses pose as great, or greater, danger to society as the substantive offenses themselves. After all, "collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality." *Iannelli* v. *United States*, 420 U.S. 770, 778 (1975) (quoting *Callanan* v. *United States*, 364 U.S. 587, 593 (1961); *see also, e.g.*, *United States* v. *Patino*, 962 F.2d 263, 267 (2d Cir. 1992) ("Such a meeting of the minds enhances the likelihood that the planned crime will be carried out.").[9]

### III.   Section 924(c)(3)(B) Is Not Unconstitutionally Vague.

Because Hobbs Act robbery is a "crime of violence" under the force clause of § 924(c)(3), the 924(c) Count remains valid as to the defendants. As a result, the Court need

---

[9]    The district court decision cited by the defendants, *United States* v. *Edmundson*, No. PWG-13-15, 2015 WL 9582736 (D. Md. Dec. 30, 2015), did not appear to consider this argument in ruling that a Hobbs Act conspiracy did not fall within the force clause of § 924(c)(3)(A), and the Government did not raise it before Judge Seibel in *Johnson*.

15

not reach the question of whether the residual clause of § 924(c)(3)(B) is constitutional.    If the

Court proceeds to consider this issue, however, it should hold that § 924(c)(3)(B) remains lawful,

and that Hobbs Act robbery constitutes a "crime of violence" under this provision as well.

### A.    Section 924(c)(3)(B) is Not Unconstitutionally Vague Under *Johnson*

18 U.S.C. § 924(e) ("ACCA"), sets a mandatory minimum sentence of 15 years if a

defendant violates 18 U.S.C. § 922(g) and has at least three prior convictions for either a "serious

drug offense" or a "violent felony."    18 U.S.C. § 924(e)(1).    ACCA defines "violent felony" as

an offense that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves

conduct that presents a serious potential risk of physical injury to another."    18 U.S.C.

§ 924(e)(2)(B)(ii).    In *Johnson*, the Supreme Court held that the ACCA's residual clause, *i.e.*,

the provision that defines a "violent felony" to include an offense that "otherwise involves

conduct that presents a serious potential risk of physical injury to another," 18 U.S.C.

§ 924(e)(2)(B)(ii), is "so vague that it fail[ed] to give ordinary people fair notice of the conduct it

punishes," 135 S. Ct. at 2556, and thus "violates the Constitution's guarantee of due process."

*Id.* at 2563.

A combination of factors not present in § 924(c)(3)(B) "conspire[d]" to doom the

"otherwise" portion of ACCA's residual clause.    *See id.* at 2557.    The Supreme Court explained

that applying the clause "requires a court to picture the kind of conduct that the crime involves in

'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of

physical injury."    *Id.* (quoting *James* v. *United States*, 550 U.S. 192, 208 (2007)).    But, the

Court concluded, the clause features two dimensions of uncertainty—"about how to estimate the

risk [of injury] posed by a crime," and "about how much risk" is required under the statute.    *Id.*

at 2557-58.    Combined, these two uncertainties "produce more unpredictability and arbitrariness

16

than the Due Process Clause tolerates," *id.* at 2558, as evidenced by the widespread disagreement among lower courts and the Court's own "repeated attempts and repeated failures to craft a principled and objective standard," *id.* at 2558-60.

The Court emphasized that its decision did not call into question the validity of many other criminal statutes using similar risk-based terms, including "substantial risk," for two reasons. *Id.* at 2561. First, the residual clause's risk-based term is linked to a list of exemplar crimes—"burglary, arson, extortion, and crimes involving the use of explosives"—that contributes to both aspects of the statute's indeterminacy. *Id.* at 2557-58; *see also id.* at 2561. "Almost none of the [other] statutes," the Court observed, had a similar feature. *Id.* Second, many of the other statutes (although not § 924(c)(3)(B)) use the risk-based term in reference to "gauging the riskiness of conduct in which an individual defendant engages on a particular occasion." *Id.* The Court stated that an "abstract inquiry offers significantly less predictability than one that deals with the actual, not with an imaginary condition other than the facts." *Id.* (alteration marks and quotation marks omitted).

Seeking to elide the significant differences in statutory language between ACCA and Section 924(c), the defendants here argue that the reasons that compelled the *Johnson* Court to invalidate ACCA's residual clause call into question the constitutionality of Section 924(c)(3)(B) (and, presumably, 18 U.S.C. § 16 and the Bail Reform Act as well, since they contain language virtually identical to Section 924(c)(3)(B)). But while the latter provisions, like ACCA's residual clause, involve a risk-based analysis of the predicate offense, the similarities end there. In particular, while ACCA's residual clause required the Court to make a risk-based assessment about the potential consequences of a particular offense – *i.e.*, whether the offense "involves conduct that presents a serious risk of physical injury to another" – Section 924(c)(3)(B) and its

17

brethren focus on the propensity for *violence* on the part of the *defendant* (and those for whose conduct he is responsible) in the course of committing the crime – *i.e.*, whether the offense "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."   This focus on the *conduct* of the defendant during the offense, rather than a set of *consequences* that may be quite remote (either factually or causally) from the criminal conduct, makes a critical difference.   Under anti-vagueness principles, a penal statute must "provide a person of ordinary intelligence fair notice of what is prohibited," and not be "so standardless that it authorizes or encourages seriously discriminatory enforcement."   *United States* v. *Williams*, 553 U.S. 285, 304 (2008).   But the characteristics of ACCA that the Supreme Court found to violate these requirements are noticeably absent from § 924(c)(3)(B).   It can hardly be claimed that an offender who engages in criminal conduct that involves the use of force by himself or another lacks notice that his offense may be deemed a "crime of violence" and subject him to enhanced penalties.

As discussed in greater detail below, given the significant differences in statutory language and the absence of other aggravating factors that the *Johnson* court deemed "tolerable in isolation," *Johnson*, 135 S. Ct. at 2560, there can be little doubt that Section 924(c)(3)(B) is sufficiently specific to satisfy the requirements of Due Process.   Indeed, multiple courts have already reached this very holding.   *See United States* v. *Taylor,* No. 09 Cr. 5517, 2016 WL 537444, at *32-35 (6th Cir. Feb. 11, 2016); *United States* v. *Johnson*, 14 Cr. 476 (CS) (S.D.N.Y. Dec. 23, 2015)[10]; *United States* v. *McDaniels*, No. 15 Cr. 171 (TSE), 2015 WL 7455539, at *7

---

[10]     Judge Seibel issued an oral ruling denying the defendant's *Johnson* motion.   A copy of the transcript of that proceeding is attached as Exhibit A.   As discussed below, despite the fact that Judge Seibel believed the defendant's vagueness challenge to 924(c)(3)(B) should be considered on an as-applied basis, Judge Seibel went on to conclude that the defendant's general

(E.D. Va. Nov. 23, 2015); *United States* v. *Hunter*, No. 12 Cr. 124 (RAJ), 2015 WL 6443084, at

*2 (E.D. Va. Oct. 23, 2015); *United States* v. *Wilson*, No 15 Cr. 21, at 8 (E.D. Va. Dec. 8, 2015)

(Dkt. No. 36); *United States* v. *Prickett*, No. 14 Cr. 30018 (PKH), 2015 WL 5884904, at *3

(W.D. Ark. Oct. 8, 2015); *Cooper* v. *Krueger*, No. 15 Civ.1425 (JBM), 2015 WL 8215348, at *3

(C.D. Ill. Dec. 8, 2015); *United States* v. *Lusenhop*, No. 14 Cr. 122 (SSB), 2015 WL 5016514, at

*3 (S.D. Ohio Aug. 25, 2015).

### 1.      Section 924(c)(3)(B) Does Not Go Beyond the Elements of the Offense To Consider Potential Extra-Offense Conduct

As discussed, ACCA's residual clause required courts to consider whether the generic

form of the offense at issue involved "conduct that presents a serious potential risk of physical

injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).   As interpreted by the Supreme Court and other

courts, ACCA's focus on the consequences of the predicate offense required courts to go

"beyond evaluating the chances that the physical acts that make up the crime injure someone"

and to evaluate the risk for injury even "after" completion of the offense.   *Johnson*, 135 S. Ct. at

at 2557; *see also id.* at 2559 (noting that "remote" physical injury could qualify under ACCA,

but that the clause does not indicate "how remote is too remote").

Among the reasons the Supreme Court supplied for striking down the residual clause was

the fact that ACCA's inquiry into whether a crime "involves conduct" that presents too much

risk of injury went beyond the offense elements, that is "beyond evaluating the chances that the

physical acts that make up the crime will injure someone."   *Id.* at 2557.   The Court found this

inquiry problematic from a notice standpoint, because risk of injury could arise in a burglary

after the breaking and entering had occurred, and an extortionist might become violent after

---

vagueness challenge also fails under *Johnson*.

making his demand.   *Id.*   The consideration of post-offense conduct was therefore part of ACCA's indeterminate "wide-ranging inquiry."   *Id.*

Section 924(c)(3)(B) is significantly narrower and more closely tied to the offender's conduct and intent.   It defines a "crime of violence" based not upon some remote set of consequences but rather upon the conduct of the defendant (and those for whose conduct he is legally responsible) during and in relation to the crime itself and not beyond.   The question is whether the offense "naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing an offense."   *Leocal* v. *Ashcroft*, 543 U.S. 1, 10 (2004) (interpreting nearly identical language in 18 U.S.C. § 16(b)).   Section 924(c)(3)(B)'s focus on the conduct of the defendant and risk of force inherent in that conduct limits the speculation that the Court found so troubling in *Johnson* and avoids the notice problems that lay at the heart of the Due Process violation in that case.   It requires little imagination or speculation to conclude that a robbery poses a "substantial risk" that it will blossom into a completed use of force.   And because a "substantial risk" that the use of force will result from the defendant's conduct is also a foreseeable one, a defendant charged under Section 924(c)(3)(B) can scarcely say that he lacked notice about the applicability of the provision when he undertook the criminal conduct.   *See United States* v. *Johnson*, 14 Cr. 476 (CS), at Tr. 21:12-22:5 (S.D.N.Y. Dec. 23, 2015) (giving "significant weight to [the] distinction" that ACCA's residual clause looks to the risk of injury after completion of the offense, whereas Section 924(c)(3)(B)'s focus is on the conduct of the defendant); *United States* v. *Doe*, 15 Cr. 302, 2015 WL 7422618, at *10 (E.D.N.Y. Oct. 29, 2015) (contrast between analyzing the defendant's actions in the offense and predictions as to the consequences of use of force is a "critical distinction" between ACCA's residual clause and 924(c)(3)(B)).

Moreover, a conviction under Section 924(c) requires not only that the defendant commit a crime of violence but also that he use or carry a firearm while doing so, or possess a firearm in furtherance of the offence.   The requirement that the firearm be intrinsically related to the crime of violence necessarily narrows that statute's application.   Indeed, defense counsel in *Johnson* acknowledged that this aspect of Section 924(c), coupled with that statute's focus on the potential use of force and the requirement that the analysis be confined to the commission of the offense, distinguished it from ACCA and made it "operate in ways that reduce [its] potential vagueness."   *See* Supplemental Reply Brief for the Petitioner, *Johnson* v. *United States*, 2015 WL 1641122, at 15-16.

Thus, because Section 924(c) focuses on the perpetrators' "use of force," rather than the potential consequences and effects of the offense, and does not go beyond "the physical acts that make up the crime," *Johnson*, 135 S. Ct. 2557, the statute lacks the key constitutional infirmities that led the Supreme Court to strike down the ACCA's residual clause.

### 2.   The Enumerated Offenses in ACCA are Absent

In addition to the textual differences, Section 924(c)(3)(B)'s structure differs from ACCA because it does not contain a "confusing" list of exemplar crimes, 135 S. Ct. at 2561, followed by an "otherwise" provision that *Johnson* treated as qualified by the listed offenses.   The *Johnson* Court cited the existence of the juxtaposition of the enumerated crimes with the residual clause as a factor contributing to the residual clause's vagueness because that structure "force[d] courts to interpret 'serious potential risk' in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives" and the enumerated offenses appeared to have little relationship to one another.   *See Johnson*, 135 S. Ct. at 2558-59 ("[T]he enumerated crimes are not much more similar to one another in kind than in degree of risk

posed. . . . "Common sense has not even produced a consistent conception of the degree of risk posed by each of the four enumerated crimes."); *see also United States* v. *Johnson*, 14 Cr. 476 (CS), at Tr. 25:9-12 (S.D.N.Y. Dec. 23, 2015) (holding that "another reason to conclude that *Johnson* would not govern here . . . [is] the confusing list of enumerated offenses in 924(e)").[11]

Critically, in striking down ACCA's residual clause, the Court expressly noted that its holding does not cast "constitutional doubt" over other criminal law provisions that use terms like "substantial risk."   *Id.* at 2561.   The Court distinguished such statutes in part because they do *not* "link[] a phrase such as 'substantial risk' to a confusing list of examples."   *Id.*   Section 924(c)(3)(B), like the statutes the Court distinguished in *Johnson*, contains no "confusing list" to cloud its analysis.   *See McDaniels*, 2015 WL 7455539, at *7.   Indeed, § 924(c)(3)(B) contains language identical to many other federal and state statutes.   *See, e.g.*, 18 U.S.C. § 16(b) (crimes of violence); 18 U.S.C. § 1952 (interstate travel with intent to commit any crime of violence to further unlawful activity); 18 U.S.C. § 1959 (VICAR); 18 U.S.C. § 3142(f)(1)(A) and (g)(1) (bail statute); 18 U.S.C. § 521(d)(3)(C) (enhanced sentence for criminal gang members); 18 U.S.C. § 3663A(c)(1)(A) (mandatory restitution); 18 U.S.C. § 5032 (juvenile transfer statutes).   Thus, while the Supreme Court believed that striking ACCA's residual clause would have little effect on other risk-based statutes, *see Johnson*, 135 S. Ct. at 2561, a decision striking § 924(c)(3)(B) would significantly affect other federal laws and state laws, an outcome the *Johnson* Court eschewed.

---

[11]     The enumerated list had troubled members of the Court in prior ACCA cases.   *See, e.g.*, *Begay* v. *United States*, 553 U.S. 137, 143 (2008) (noting that "the examples are . . . far from clear in respect to the degree of risk each poses"); *James* v. *United States*, 550 U.S. 192, 215-16, 230 n.7 (2007) (Scalia, *J.*, dissenting) (stating that comparing a predicate offense with its closest analog among enumerated offenses is an unhelpful test if the analog is not obvious because the listed offenses have little in common).

### 3.   The Supreme Court Has Not "Repeatedly" Failed to Construe § 924(c)(3)(B) in a Workable Way

The third significant difference between *Johnson* and the instant case is the *Johnson* Court's emphasis on its own "repeated" inability to develop a "principled and objective standard" for the ACCA.   135 S. Ct. at 2558.   This concern, absent here, further animated the Court's decision to invalidate ACCA's residual clause.   *See id.* at 2559 (noting that *Johnson* was the Supreme Court's "fifth [case] about the meaning of the [ACCA] residual clause"); *see also Sykes*, 131 S. Ct. at 2287 (Scalia, *J.*, dissenting) (stating that the Court's repeated failure in addressing ACCA is "[w]hat sets ACCA apart" and "confirms" its vagueness).   *Johnson* concluded that its ACCA decisions had been a "failed enterprise." 135 S. Ct. at 2560.

By contrast, the Supreme Court has previously considered the language in 18 U.S.C. § 16(b) – which is virtually identical to § 924(c)(3)(B) – in a decision that occurred over ten years ago and caused no controversy among the justices.   *See Leocal*, 543 U.S. at 1.   In *Leocal*, a *unanimous* Court expressed no uncertainty and had no difficulty in adopting an interpretive framework that identified one offense (burglary) as the "classic example" of a § 16(b) qualifying offense, and another (DUI) that was not.   *See Leocal*, 543 U.S. at 10.   The Court's analysis (which was joined by Justice Scalia, the author of *Johnson* and the principal critic of ACCA's vagueness leading up to *Johnson*) belies a claim that § 924(c)(3)(B) is too uncertain to be readily applied and to permit evenhanded application.    Notably, the Second Circuit has expressly relied on *Leocal* in interpreting § 924(c)(3)(B).   *See, e.g.*, *Acosta*, 470 F.3d at 134.

The *Johnson* Court also observed that numerous lower court splits existed regarding "the nature of the inquiry" that a court should conduct under ACCA.   *Johnson*, 135 S. Ct. at 2560.

23

Significantly, the disagreements "went beyond matters of degree." *Id.*   By contrast, the

defendants have not shown anywhere near the same level of confusion among lower courts

regarding § 924(c)(3)(B).   *See Hunter*, 2015 WL 6443084, at *2 (ACCA's residual clause,

unlike § 924(c)(3)(B), "faced significantly more confusion in the lower courts"); *McDaniels*,

2015 WL 7455539, at *7.   Moreover, "[t]hat there may be marginal cases in which it is difficult

to determine the side of the line on which a particular fact situation falls is no sufficient reason to

hold the language too ambiguous to define a criminal offense."   *United States v. Petrillo*, 332

U.S. 1, 5 (1947); *see also Johnson*, 135 S. Ct. at 2560 ("even clear laws produce close cases").

### 4.   Recent Non-Binding Decisions Holding § 16(b) & § 924(c)(3)(B) Unconstitutional Rest Upon Faulty Reasoning, and Should Not Control this Court's Analysis

The defendants rely on the Ninth Circuit's decision in *Dimaya* v. *Lynch*, 803 F.3d 1110

(9th Cir. 2015) and the Seventh Circuit's decision in *United States* v. *Vivas-Ceja*, 15 Cr. 1770,

2015 WL 9301373, at *1 (7th Cir. 2015), both of which invalidated § 16(b), to argue that

§ 924(c)(3)(B) is unconstitutionally vague. (*See* Br. 15).   As explained below, *Dimaya* and

*Vivas-Ceja* were wrongly decided as they misconstrued the teachings of *Johnson*.[12]

First, central to these courts' analyses (and the defendants' argument in the motion to

dismiss) was the view that requiring courts to evaluate the "ordinary case" of an offense rendered

the provisions impermissibly vague.   But such inquiries are, in fact, commonplace for federal

judges.   As this Court is well aware, courts at every sentencing must evaluate where a

defendant's conduct falls on the spectrum of ways of committing the offense—and hence how a

---

[12]      A panel decision of the Fifth Circuit also recently invalidated § 16(b).   *See United States* v. *Gonzalez-Longoria*, 15-40041, 2016 WL 537612 (5th Cir. Feb. 10, 2016).   However, the Fifth Circuit thereafter issued an order granting rehearing en banc.   *See United States* v. *Gonzalez-Longoria*, 15-40041, 2016 WL 766980 (5th Cir. Feb. 26, 2016).   Under Fifth Circuit Local Rule 41.3, that order vacates the previous panel decision.

defendant's case compares to a norm.   Congress has commanded such an analysis under 18 U.S.C. § 3553(a) and in particular under § 3553(a)(6), and courts have long applied these provisions using general, abstract, and national standards—such as the U.S. Sentencing Guidelines.   *See, e.g.*, *Gall* v. *United States*, 552 U.S. 38, 54 (2007) ("Since the District Judge correctly calculated and carefully reviewed the Guideline range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.").   The straightforward inquiry posed by § 924(c)(3)(B) is not difficult to apply and it tracks the type of analysis that courts frequently perform.   *See Wilson*, No 4:15-CR-21, at 8 (holding that Section 924(c)(3)(B) is not unconstitutionally vague, but rather "simply" adds the "straightforward inquiry" of "whether there is a substantial risk that physical force may be used in the course of committing the predicate offense").

More importantly, the Supreme Court has already directly spoken to the acceptability of the "ordinary case" inquiry in the § 16(b) (and thus the § 924(c)(3)(B)) context.   In *Leocal*, the Court expressed no concerns with the legality of this practice, observing that § 16(b) "simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense."   543 U.S. at 10.   The conclusion that *Johnson* "does not prohibit all use of the 'ordinary case' . . . seems compelled in light of the fact that *Johnson* did not even mention *Leocal*."   *Dimaya*, 803 F.3d at 1127 (Callahan, *J.*, dissenting); *United States* v. *Johnson*, 14 Cr. 476 (CS), at Tr. 25:21-24 ("*Johnson* didn't even mention *Leocal*, which it surely would have if it had meant to cast doubt on that decision.").

Second, the recent decisions striking down residual clauses in § 16(b) and § 924(c) inexplicably devalued (or simply disregarded) the many other factors that rendered ACCA's residual clause unconstitutionally vague.   *Vivas-Ceja*, 2015 WL 9301373, at *4 (stating that

25

neither list of enumerated crimes in ACCA nor confusion among courts interpreting ACCA were critical to *Johnson* holding); *Dimaya*, 803 F.3d at 1118 (list of enumerated crimes in ACCA not determinative in *Johnson*).   This faulty interpretation directly conflicts with the pervasive references in *Johnson* to the confusion caused by ACCA's enumerated offenses, and with the *Johnson* Court's own explicit admonition that while "[e]ach of the uncertainties in [ACCA's] residual clause may be tolerable in isolation . . . their sum makes a task for us which at best could be only guesswork."   135 S. Ct. at 2560 (internal quotation marks omitted).

### B.   The Defendants Cannot Present a Vagueness Challenge Because § 924(c)(3)(B) Is Not Unconstitutionally Vague as Applied to Them

As a general matter, vagueness challenges to statutes not threatening First Amendment interests are examined on an "as-applied" basis, focusing on the facts of the case at hand.   *See United States* v. *Coppola*, 671 F.3d 220, 235 (2d Cir. 2012).   Although the *Johnson* Court entertained a facial challenge to ACCA, it did so in the context of a statute exhibiting an inherent inability to produce "evenhanded, predictable, or consistent" applications."   *Johnson*, 135 S. Ct. at 2563.   The provision was, the Court found, "a judicial morass that defies systemic solution, a black hole of confusion and uncertainty that frustrates any effort to import some sense of order and direction."   *Id.* at 2562 (internal quotation marks omitted).

Absent unusual circumstances of the type present in *Johnson*, as-applied review is preferred, because "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court."   *United States* v. *Farhane*, 634 F.3d 127, 138 (2d Cir. 2011).   This approach is consistent with the general principle that "as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the

26

other valid, a court's plain duty is to adopt that which will save the Act enacted by Congress." *Id.* at 138 (internal citation omitted). *Johnson* did not purport to overrule the Supreme Court's numerous cases requiring a court to analyze a vagueness challenge outside of the First Amendment context on the facts of the particular case before it. *See, e.g., Chapman* v. *United States*, 500 U.S. 453, 467 (1991); *United States* v. *Powell*, 423 U.S. 87, 92 (1975); *United States* v. *Mazurie*, 419 U.S. 544, 550 (1975). "[N]othing in *Johnson* altered the well-settled rule in this Circuit that such challenges should first be reviewed as-applied to the objecting Defendant." *United States* v. *Doe*, 2015 WL 7422618, at *7 (requiring as-applied challenge to § 16(b) even post-*Johnson*, and finding no vagueness where predicate offense was providing material support to a terrorist organization).

  In considering an as-applied vagueness challenge under the Fifth Amendment, courts consider (1) "whether the challenged statute, as written, provides notice sufficient to alert ordinary people as to what conduct is prohibited," and (2) whether "the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute." *Farhane*, 634 F.3d at 139 (internal citations omitted).

  Here, there can be little dispute that ordinary people would consider the risk that force will be used to violently rob a home with a firearm to be real and immediate, thereby satisfying the definition of a "crime of violence" under § 924(c)(3)(B). Nor can it be denied that the application of § 924(c) to a violent robbery falls within the core of the conduct that Congress meant to include in its definition of "crime of violence." While it may be the case that there are robberies that present a closer call when it comes to determining whether they constitute crimes of violence, this is not a close case – the victim was shot in the leg during the robbery. Indeed,

the defendants make no argument at all that an as-applied challenge could succeed here.   Thus, because § 924(c)(3)(B) is not unconstitutionally vague as applied to the conduct with which the defendants are charged, the motion to dismiss should be denied.   *See, e.g.*, *United States* v. *Johnson*, 14 Cr. 476 (CS) (S.D.N.Y. Dec. 23, 2015) (denying a motion to dismiss a 924(c) in light of *Johnson* and noting that "notwithstanding the approach taken in *Johnson*, I do think the proper way to consider the matter here is as-applied").

*   *   *

In sum, § 924(c)(3)(B) is constitutional both on its face and as applied to the defendants in this case.   Acts of Congress enjoy a strong presumption of validity.   *United States* v. *Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963).   A court's duty is to construe, rather than to condemn, a statute.   *See Skilling* v. *United States*, 561 U.S. 358, 403 (2010).   The Supreme Court was convinced by "[n]ine years' experience," and by multiple prior decisions, that ACCA's residual clause was not susceptible to principled construction.   *Johnson*, 135 S. Ct. at 2560.   Section 924(c)(3)(B), by contrast, does not implicate the "sum" of factors that led the *Johnson* Court to its conclusion.   *Id.*   The Court should therefore join the many courts to uphold § 924(c)(3)(B)'s validity, and reject the defendants' vagueness challenge.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the defendants' motion to dismiss in its entirety.

Dated: New York, New York
      March 11, 2016

                    Respectfully submitted,

                    PREET BHARARA
                    United States Attorney for the
                    Southern District of New York


By:    /s/ Jordan Estes
            Jordan Estes
            Justina Geraci
            Assistant United States Attorneys
            (212) 637-2543/2468

29